

05-CV-00827-CMP

```
___ FILED    ___ ENTERED
___ LODGED   ___ RECEIVED

      MAY -3 2005      ES

            AT SEATTLE
     CLERK U.S. DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY
```

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALEXANDER SERRA, M.D.,

    Plaintiff,

v.

CENTER FOR DIAGNOSTIC IMAGING, INC., a Minnesota corporation; CDI MANAGEMENT CORP., a Minnesota corporation; ONEX, INC., a Canadian corporation; DON JACOBSEN, an individual; TOM TOMLINSON, an individual; and ROBERT BAUMGARTNER, an individual,

    Defendants.

No. C05-00827 JCC

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE

## I. INTRODUCTION

1.    This is an action for specific performance of a single provision of a contract between a physician and a non-physician medical practice management company and its affiliates. A contract between plaintiff Alexander Serra, M.D. (Dr. Serra) and defendant Center for Diagnostic Imaging, Inc. provides generally for disputes between them to be resolved by binding arbitration. However, the contract expressly permits judicial actions for specific performance of provisions of the contract. In October 2004, Dr. Serra alerted CDI to what he believed were instances of fraudulent billing by CDI. In February 2005, Dr. Serra initiated an arbitration between him and defendant CDI. CDI sought by way of counterclaim to remove Dr.

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE
Case No.

- 1 -

ORIGINAL



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1845.10 0001 BSC.DOC

1  Serra from the practice the parties had created. However, on at 6 p.m. on Friday, April 29, 2005,
2  after changing the locks on Dr. Serra's practice facility, CDI unilaterally ejected Dr. Serra from
3  his medical practice effective Sunday, May 1, 2005 at 9 p.m. This action blatantly violated the
4  provisions of the contract between the parties and is a clear attempt to deprive Dr. Serra of his
5  livelihood during the pendency of the arbitration. Dr. Serra files this complaint to seek limited
6  injunctive relief specifically enforcing the removal provisions of the contract, so the arbitration
7  can proceed with the maintenance of the status quo that existed prior to defendant's illegal "self-
8  help" actions.

## II. THE PARTIES

2. Plaintiff Alexander Serra, M.D. is an individual who resides in the County of King in the State of Washington. Dr. Serra is a radiologist licensed in the State of Washington to practice medicine.

3. Defendant Center for Diagnostic Imaging, Inc. is a Minnesota corporation with its principal place of business in St. Louis Park, Minnesota. On information and belief, Defendant CDI Management Corp. is a wholly owned subsidiary of CDI. Center for Diagnostic Imaging, Inc. and CDI Management, Inc. are hereinafter collectively referred to as "CDI." CDI is not in the business of practicing medicine; instead, it manages physician practices.

4. On information and belief, CDI has been acquired by Defendant Onex, Inc., ("Onex"), a Canadian corporation. Plaintiff is ignorant of the current corporate status of CDI, which may be operated as either a subsidiary or division of Onex. On information and belief, Onex is liable for the matters alleged herein as successor in interest to CDI.

5. By an Operating Agreement entered into by Dr. Serra and CDI on or about September 30, 2001 (a true and correct copy of which is attached hereto as Exhibit A), Dr. Serra and CDI together formed CDI-Northwest, a limited liability company formed under the laws of the State of Minnesota. The Operating Agreement was subsequently amended on June 1, 2003

VERIFIED COMPLAINT FOR SPECIFIC
PERFORMANCE
Case No.

- 2 -



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1845.10 0001 BSC.DOC

1  ("First Amendment") and on September 26, 2003 ("Second Amendment"). Copies of the First
2  and Second Amendments are attached hereto as Exhibits B and C, respectively.

3  6. CDI-Northwest is an independent diagnostic testing facility that began providing
4  services on approximately December 9, 2001 with mobile MRI. CDI-Northwest attained full
5  service capabilities on approximately March 10, 2002. It provides MRI, CT and injection
6  procedures. Dr. Serra is the Medical Director of CDI-Northwest and is an Approved Radiologist
7  under the terms of the Operating Agreement. CDI and/or its wholly owned subsidiary, CDI
8  Management Corp. is the Center Manager of CDI-Northwest under the terms of the Operating
9  Agreement. Dr. Serra owns a 49% interest in CDI-Northwest and CDI owns a 51% interest in
10 CDI-Northwest. CDI-Northwest is governed by a Board of Governors. There are currently a
11 total of four Governors on the Board of Governers, three Governors appointed by CDI and one
12 Governor appointed by Dr. Serra.

13 7. Defendant Don Jacobsen is an individual who resides in the State of Minnesota.
14 Mr. Jacobsen is a member of the Board of Governors of CDI-Northwest. Mr. Jacobsen was
15 appointed to the Board of Governors by CDI.

16 8. Defendant Tom Tomlinson is an individual who resides in the State of Minnesota.
17 Mr. Tomlinson is the Chief Operating Officer of CDI and is a member of the Board of Governors
18 of CDI-Northwest. Mr. Tomlinson was appointed to the Board of Governors by CDI.

19 9. Defendant Bob Baumgartner is an individual who resides in the State of
20 Minnesota. Mr. Baumgartner is the Chief Executive Officer of CDI and a member of the Board
21 of Governors of CDI-Northwest. Mr. Baumgartner was appointed to the Board of Governors by
22 CDI.

### III. JURISDICTION AND VENUE

24 10. This Court has subject matter jurisdiction over the claims asserted herein pursuant
25 to 28 U.S.C. § 1332, as all plaintiffs and all defendants are citizens of different states and the
26 amount in controversy, exclusive of interest and costs, exceeds $75,000.

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE
Case No.
- 3 -



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1845 10 0001 BSC.DOC

11. Venue is proper in this District as Dr. Serra resides in this District and the acts and occurrences that give rise to the causes of action set forth herein occurred in the District.

## IV. BACKGROUND

12. The Operating Agreement of CDI-Northwest divides certain duties and responsibilities between Dr. Serra and CDI. The Operating Agreement provides that as an Approved Radiologist, Dr. Serra, among other things, provides all of the radiological services for all of the procedures at CDI-Northwest, provides interpretations of medical images, cooperates with the Center Manager in establishing imaging protocols, collects data related to CDI-Northwest and its services, and reviews the business and financial matters of CDI-Northwest. See Ex. A, Operating Agreement, Section 9.2, "Duties of Radiologist." The Operating Agreements provides that, as Medical Director, Dr. Serra is responsible for arranging medical staffing of the CDI-Northwest Center, overseeing the conduct of the procedures performed at the Center, overseeing the purchase and disbursement of pharmacological materials, consulting with the Center Manager regarding the selection, training and supervision of Center personnel, and reviewing with the Center Manager the financial and operational status of the Center. See Ex. A, Operating Agreement, § 9.6, "Duties of Medical Director." The Operating Agreement provides that CDI, as the Center Manager, is responsible for equipment purchasing, leasing and maintenance, licensing of the Center, marketing, billing to third party payors (*i.e.*, the federal government and private insurers), financing, policies and procedures for Center operations, purchasing insurance, and providing accounting services and the like. See Ex. A, Operating Agreement, Section 10.1, "Center Manager, Duties." In addition, the Center Manager was granted a power of attorney to conduct billing. *Id.*, § 10.3.

13. Beginning in the Summer of 2004, Dr. Serra discovered information that suggested that CDI was improperly billing such services to both federally funded and private insurers. In a letter dated September 20, 2004, Dr. Serra gave notice of breach to CDI pursuant to §§ 8.3 and 17.1 of the Operating Agreement. Briefly described, these breaches consist of the

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE
Case No.

- 4 -

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1845.10 0001 BSC.DOC

following, among others: (a) as Center Manager, CDI billed for therapeutic pain management services that CDI-Northwest is not authorized under federal law to perform, or bill for, and did so through the sham of falsely representing that the services were performed by a professional services organization named Medical Scanning Associates, P.A. ("MSC") when in fact the services were performed by Dr. Serra, who was authorized to perform such procedures and had no relationship with MSC at the time; (b) CDI conducted the unauthorized practice of medicine by permitting a non-physician to read medical imaging, delivering medical services it is not authorized to deliver, altering Dr. Serra's transcription of services he has performed, and imposing a "Policy and Procedures Manual" that addresses, often incorrectly, the medical procedures to be followed by medical personnel; (c) CDI violated patient confidentiality in derogation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); and (d) CDI failed to adequately manage CDI-Northwest. Each of these breaches exposed Dr. Serra to potential liability under state and federal law.

14. Because CDI failed to cure its breaches within 60 days, Dr. Serra filed an Arbitration Demand on or about February 15, 2005, a true and correct copy of which is attached hereto as Exhibit D. Among the relief sought by Dr. Serra was an order relieving him of his non-compete obligations pursuant to § 8.3 of the Operating Agreement, which provides that CDI's failure to cure a material breach within 30 days notice of such breach voids the non-compete provisions contained in § 8.2.1.

15. Within six days of Dr. Serra filing his arbitration demand and prior to answering, CDI provided a "report" to the Board of Governors that purported to be based upon "various complaints" by unnamed persons and "other evidence." This report "found" that Dr. Serra had created a threatening work environment, had "threatened" CDI-Northwest personnel, had used CDI-Northwest facilities for his "personal benefit" to bill his professional services and other items. The report proposed that Dr. Serra comply with a set of "conduct requirements" which included, among other things, that "Dr. Serra is not to contact or give orders to any member of

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE
Case No.

- 5 -


HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1845.10 0001 BSC.DOC

the administrative staff unless they relate to the matters of medical care and patient safety"; that "Dr. Serra will cease to have any contact with patients or gather any information from patients, including billing information, that is unrelated to the provision of medical advice and services"; and that Dr. Serra "will ... not interfere with the administration or operation of CDI-Northwest."

16. The Board of Governors, controlled by CDI, adopted this report and conduct requirements in a set of resolutions on February 23, 2005. The three Governors who were senior CDI employees "instructed" CDI to advise Dr. Serra that his conduct may violate the terms of his agreement and "may violate state and federal laws relating to treatment of employees" and required Dr. Serra to abide by the "code of conduct" recommended by CDI.

17. CDI answered Dr. Serra's demand for arbitration and served counterclaims on or about March 1, 2005. Among the relief requested by CDI in its response was an order "declaring that CDI is entitled to terminate Dr. Serra as Medical Director and an Approved Radiologist for CDI-NW." A true and correct copy of such answer and counterclaims is attached hereto as Exhibit E.

18. Dr. Serra timely appointed an arbitrator to hear the claims pursuant to § 17.12 of the Operating Agreement. CDI appointed as arbitrator a partner in the law firm that represents CDI on employee matters. Dr. Serra objected to this appointment and CDI has yet to appoint a replacement arbitrator. As a consequence, neither the second nor the third arbitrator (who is to be appointed by the two party-appointed arbitrators) have yet to be appointed, notwithstanding that Dr. Serra's demand was made over two and half months ago.

19. Since the time that the arbitration demand was filed, Dr. Serra has continued to encounter improper billing and other practices of CDI. These practices include the wholesale false billing of epidurography services to both federal and private payers. Moreover, despite representing that it ceased in October 2004 billing Medicare for therapeutic pain management services performed by Dr. Serra and which CDI was not authorized to either perform or bill for, CDI continued to bill for these services through at least January 2005. Other issues have also

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE
Case No.

- 6 -

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1845.10 0001 BSC.DOC

arisen. In addition, CDI unilaterally changed the informed consent document, which is required of every patient undergoing an image-guided invasive procedure, to, among other things, eliminate critical written patient responses to questions pertaining to allergies and bleeding tendencies. This change was discovered when a patient on Dr. Serra's injection table, with a five-inch needle positioned on a lumbar nerve root, requested that Dr. Serra cease his work because the patient was allergic to the contrast medium. In addition, Dr. Serra and a technologist discovered in a closet at CDI-Northwest the film archives from invasive procedures on 112 patients which had never found their appropriate place in the patients' medical jackets.

20.    Dr. Serra wrote CDI on or about April 25, 2005 to inform them of a specific billing impropriety and demand that it cease. This billing impropriety was the unbundling of epidurography from epidural steroid injections. The appropriate practice in performing and billing for epidural steroid injections is to bill for a single procedure, one component of which is epidurography. Instead of billing in this method, CDI unbundles the epidurography from the epidural steroid injection and bills for both "procedures." This unbundling results in overbillings to both federally funded and private insurers. A true and correct copy of the letter is attached hereto as Exhibit F.

21.    Four days after Dr. Serra sent his letter alerting CDI that he objected to the continued inappropriate billing of epidurographies, CDI recommended that Dr. Serra be removed as an Approved Radiologist and as Medical Director of CDI-Northwest. This recommendation came in the form of a memorandum which purported to document unspecified conduct of Dr. Serra after the Board's resolution directing him to comply with a set of conduct requirements. The report stated that Dr. Serra had: (1) made disrespectful and abusive comments to unidentified employees of the Center who became fearful of Dr. Serra; (2) Dr. Serra communicated to unidentified CDI employees regarding the pending arbitration; (3) Dr. Serra criticized and failed to speak positively about CDI and the CDI-Northwest Center; (4) Dr. Serra marketed his medical practice; and (5) Dr. Serra failed to cooperate with CDI. The

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE
Case No.

- 7 -


HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1845.10 0001 BSC.DOC

report concluded that "it is in the best interests of the Center to terminate [Dr. Serra's] employment."

22. In connection with its recommendation to remove Dr. Serra as an Approved Radiologist, and after surreptitiously changing the locks on the CDI-Northwest facilities, CDI, at approximately 6:00 p.m. on Friday, April 29, 2005, (1) with a chronic pain patient in the waiting room waiting to see Dr. Serra for procedures, immediately escorted Dr. Serra; (2) an MRI patient on the table being scanned; (3) a pending need for an immediate report on a patient scheduled for the next morning; and (4) over 30 undictated exams from that day, including a heart MRI.

## FIRST CAUSE OF ACTION
## FOR SPECIFIC PERFORMANCE OF CONTRACT

23. Dr. Serra hereby incorporates by reference paragraphs 1 through 22 above as though fully set forth in this paragraph 23.

24. The Operating Agreement is a binding agreement and is supported by adequate consideration.

25. Section 17.12 of the Operating Agreement provides that "all disputes relative to interpretation of the provisions of this Agreement or any other dispute arising among the parties" shall be resolved by final and binding arbitration. The Operating Agreement also provides, however, that "[t]he parties will be irreparably damaged in the event that this Agreement is not specifically enforced. Therefore, if any party so required under this Agreement fails to enter into any agreement or take any other action required by this Agreement, then, in any such event, the other party may institute and maintain a proceeding to compel the specific performance of this Agreement. Such remedy, however, shall be cumulative and not exclusive, and shall be in addition to any other remedy at law or in equity that the parties may have." Operating Agreement, § 17.15.

26. In connection with reporting to the Board of Governors of CDI its recommendation that Dr. Serra be removed as Medical Director and Approved Radiologist, and

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE
Case No.

- 8 -


HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1845.10 0001 BSC.DOC

in connection with escorting Dr. Serra from the premises and changing the locks on the facilities, CDI proposed certain resolutions to the Board of Governors of CDI-Northwest. These resolutions recite that after having put Dr. Serra on warning, the most recent report of CDI demonstrates that Dr. Serra's actions "(a) violate the terms of Dr. Serra's Agreement with the Company; (b) have a significant negative impact on the financial performance of the Company; (c) are in direct violation of his fiduciary duties to the Company; (d) create a possible negative and hostile work environment for employees at the Center; and (e) put the Company at significant risk of violation of state and federal laws relating to the treatment of employees." Based on these findings, the resolutions conclude that "it is in the best interest of the Company to terminate the services of Dr. Serra as an Approved Radiologist of the Company." A true and correct copy of the proposed resolutions and the memoranda on which they are purportedly based are attached hereto as Exhibit G.

27. The proposed resolutions removing Dr. Serra as an approved radiologist purport to be effective on 9:00 p.m. on the evening of Sunday, May 1, 2005. On information and belief, these resolutions were adopted by the CDI designees on the CDI-Northwest Board of Governors on or before May 1, 2005.

28. Section 9.3 of the Operating Agreement of CDI-Northwest clearly defines the circumstances under which an Approved Radiologist may be removed from his position as such. The resolutions purporting to remove Dr. Serra appear to be based upon the *former* provisions of § 9.3 of the Operating Agreement, which formerly provided that "RADIOLOGISTS [previously defined to be Dr. Serra and his affiliated practitioners] shall immediately remove any Approved Radiologist from providing service to the Center upon the occurrence of any one or more of the following events ... 9.3.6. If the Board believes in good faith that the Approved Radiologist is not properly fulfilling his or her duties pursuant to this Agreement or that the Approved Radiologist's continued service to the Center is not in the best interests of the Center." This

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE
Case No.

- 9 -

1845.10 0001 BSC.DOC



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

provision is no longer a part of the Operating Agreement, by virtue of the Second Amendment to the Operating Agreement.

29. Section 9.3 was subsequently amended and modified in its entirety by the parties on or about September 26, 2003 to state as follows: "The Board may terminate, or direct the termination of, the services of an Approved Radiologist in the event that the Board determines, in its reasonable judgment, and after notice to Dr. Serra and to the Approved Radiologist with reasonable opportunity to respond to that notice and to remedy the notified behavior, that the ***service of the Approved Radiologist do not meet the standards for the performance of professional duties by a radiologist in the geographic area*** of the LLC's Centers, in the type of Center operated by the LLC, according to industry standards for that area at the time." (Ex. C, emphasis added.)

30. The Board of Governor's Resolutions purporting to remove Dr. Serra as an Approved Radiologist fail to meet any of the relevant criteria under the current § 9.3 of the Operating Agreement for removal of Dr. Serra. There is no reference in any of those resolutions to the "standards for the performance of professional duties by a radiologist in the geographic area of the LLC's Centers, in the type of Center operated by the LLC, according to industry standards for that area at the time." Instead, the sole basis for removal is the Board's conclusion that removal would be in the best interests of CDI-Northwest based upon Dr. Serra's alleged treatment of employees and other administrative matters that may impact on the financial performance of CDI-Northwest. No aspect of the resolutions removing Dr. Serra address the professional, medical activities or treatment of patients by Dr. Serra. Nor could there be any findings that Dr. Serra failed to meet the professional standards for radiologists employed at Centers like CDI-Northwest in the Seattle area, as Dr. Serra has at all times performed at or above such standards.

31. CDI's purported removal of Dr. Serra, as an Approved Radiologist and as Medical Director, breach the provisions of § 9.3, as amended. On information and belief, the

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE
Case No.

- 10 -


HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1845.10 0002 BSC.DOC

articulated basis of Dr. Serra's removal is a pretext for the true purpose, to prevent Dr. Serra from further investigating and challenging CDI's improper billing practices.

32. Dr. Serra will be irreparably harmed if he is removed as an Approved Radiologist of CDI-Northwest. Dr. Serra has no alternative facilities to perform medical services. Dr. Serra has spent at least the last four years building his practice, including his relationships with patients and with referring physicians. If Dr. Serra is forced out of practice by his ejection from CDI-Northwest, Dr. Serra will be unable to maintain and sustain his relationships with his patients and his referral base. This loss of continuity will result in a loss of goodwill and damages that are not capable of being ascertained with reasonable certainty. They will also result in an intangible loss to Dr. Serra in the practice of his profession and the personal satisfaction that such a practice provides.

WHEREFORE, plaintiff Dr. Serra respectfully prays for the following relief:

A. For a temporary restraining order and preliminary and permanent injunction enjoining CDI and Governors appointed by CDI to the Board of Governors of CDI-Northwest, to refrain from the enforcement of the resolutions adopted on May 1 purporting to remove Dr. Serra as an Approved Radiologist and Medical Director of CDI-Northwest and that Dr. Serra be reinstated immediately as an Approved Radiologist and Medical Director of CDI-Northwest until the arbitration now pending between the parties is resolved;

B. For an order that CDI be compelled to arbitrate its claims, if any, that it is entitled to remove Dr. Serra as an Approved Radiologist and Medical Director;

C. For Dr. Serra's costs of suit incurred herein; and

D. For such other and further relief that the Court deems just and proper.

DATED: May 3, 2005.

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE
Case No.

- 11 -

HB
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1845 10 0001 BSC.DOC

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____
Jeffrey T. Sprung, WSBA #23607
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292

Timothy T. Scott
Hae-Won Min
Tracy J. Phillips
SIDLEY AUSTIN BROWN & WOOD LLP
555 California Street, Suite 5000
San Francisco, CA 94104
(415) 772-1200

Attorneys for Plaintiffs

---

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE
Case No.

- 12 -


HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1845.10 0001 BSC.DOC

## VERIFICATION

I, Dr. Alexander Serra, being first duly sworn, depose and state as follows:

1. I have personal knowledge of the facts stated herein. If sworn as a witness, I would competently testify thereto.

2. I have reviewed the complaint prepared on my behalf against the Center for Diagnostic Imaging, *et al.*, for specific performance. The facts stated therein are true of my own personal knowledge except as to those allegations stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

DATE: 5/3/05

_____
Dr. Alexander Serra